# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| DEBORAH J. MCGREGOR, M.D, | DOCKET NUMBER |
| Appellant, | AT-1221-15-0846-B-1 |
| v. | |
| DEPARTMENT OF VETERANS AFFAIRS, | DATE: June 6, 2023 |
| Agency. | |

# THIS ORDER IS NONPRECEDENTIAL[1]

Sarah Dragotta, Esquire, Exton, Pennsylvania, for the appellant.

Tsopei Robinson, Montgomery, Alabama, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## REMAND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction.  For the reasons discussed below, we GRANT the appellant's petition for review, FIND that she established the Board's jurisdiction over her claims, VACATE the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

initial decision, and REMAND the appeal to the Atlanta Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2      The procedural history in this matter is long and involved.  Many of the essential facts are set forth in the Board's 2016 Remand Order, and we rely on that decision as appropriate.  *McGregor v. Department of Veterans Affairs*, MSPB Docket No. AT 1221-15-0846-W-2, Remand Order (July 5, 2016) (Remand Order).

¶3      Effective August 15, 2010, the agency appointed the appellant to an excepted-service position as a Physician with the agency's Central Alabama Veterans Healthcare System (CAVHCS) under the authority of 38 U.S.C. § 7401(1).  *Id.*, ¶ 2.  Her appointment was subject to a 2-year trial period.  *Id.*  By letter dated December 7, 2011, the agency informed the appellant that she would be terminated during her trial period, effective December 28, 2011, based on the recommendation of the agency's Professional Standards Board (PSB), which found that she had engaged in "substandard care, professional misconduct, or professional incompetence."  *Id.*  On September 1, 2015, the appellant filed a Board appeal, challenging her termination and arguing that she received an unjustified unsatisfactory performance appraisal in reprisal for her filing a complaint with the Office of Inspector General (OIG) and for disclosing operational concerns regarding:  (1) the lack of basic equipment; (2) the lack of security guards when dealing with difficult patients; (3) the practice of over-prescribing pain medication; and (4) inadequate patient care resulting from staffing issues and negligent staff.  *McGregor v. Department of Veterans Affairs*, MSPB Docket No. AT-1221-15-0846-W-1, Appeal File (W-1 AF), Tab 1 at 5, 12.

¶4      Without holding the appellant's requested hearing, the administrative judge dismissed the appeal for lack of jurisdiction.  Remand Order, ¶ 7.  He found that the appellant could not directly appeal her termination to the Board because she was not an "employee" with 5 U.S.C. chapter 75 appeal rights, and that, although

the appellant exhausted her administrative remedy with the Office of Special Counsel (OSC), the Board otherwise lacked jurisdiction over the her claims as an IRA appeal because an agency physician appointed under 38 U.S.C. § 7401(1) whose termination involved a question of professional conduct or competence, such as the appellant's, is excluded by that same statute from Board jurisdiction over IRA appeals. *Id.*

¶5 The appellant filed a petition for review of that initial decision, which the Board granted. The Board found that the administrative judge correctly decided that the Board lacked jurisdiction over the appellant's claims as a direct appeal to the Board under 5 U.S.C. chapter 75. Remand Order, ¶ 9. However, citing *Harding v. Department of Veterans Affairs*, 448 F.3d 1373, 1375-77 (Fed. Cir. 2006), the Board vacated the administrative judge's finding that it lacked jurisdiction over the IRA appeal because the appellant's termination involved a question of professional conduct or competence, finding that such a termination did not preclude jurisdiction. Remand Order, ¶¶ 10-11. It also vacated the administrative judge's finding that the appellant had shown that she exhausted her administrative remedy with OSC. *Id.*, ¶ 18. The Board remanded the appeal for the administrative judge to issue a jurisdictional order informing the appellant of the burden and elements of proof for establishing jurisdiction over her IRA appeal, and to afford the parties an opportunity to submit evidence and argument regarding the timeliness of any claims that she exhausted before OSC. *Id.*, ¶¶ 18-19.

¶6 On remand, the administrative judge issued an order regarding jurisdiction and timeliness. *McGregor v. Department of Veterans Affairs*, MSPB Docket No. AT-1221-15-0846-B-1, Remand File (RF), Tab 2. In response, the appellant recounted numerous events that occurred during her tenure at CAVHCS that she alleges constitute injustices, lapses in policy and procedure, and "micro aggression towards patients and professional staff" that reveal a health care system without sufficient safeguards for quality of care. RF, Tab 3. She also

reiterated her claim that she was retaliated against for disclosing her concerns regarding the state of operations at the CAVHCS facility, as detailed above. *Id.* at 5-6, 8, 14-15, 17, 19, 21.

¶7 In a remand initial decision, the administrative judge found that none of the documentation submitted by the appellant established exhaustion with OSC by preponderant evidence. RF, Tab 4, Remand Initial Decision (RID) at 6-7. He further observed that the appellant failed to submit a copy of her OSC complaint and that she did not otherwise claim before the Board that she exhausted her claims with OSC. RID at 7-8. Thus, he found that the appellant failed to establish the exhaustion requirement, and he dismissed the appeal for lack of jurisdiction. RID at 9-10.

¶8 The appellant has filed the instant petition for review of the remand initial decision. *McGregor v. Department of Veterans Affairs*, MSPB Docket No. AT-1221-15-0846-B-1, Remand Petition for Review File, (RPFR File), Tab 1. She relies on her sworn statement before the Pennsylvania State Board of Medicine to show that she made protected disclosures and generally appears to suggest that the Board should similarly find that she was credible. *Id.* at 5, 8. She states that she presented OSC with the same examples of agency wrongdoing that she presented to the Board. *Id.* at 11. The agency has not responded to the appellant's petition for review.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶9 We start our analysis by explaining that, because all of the appellant's alleged disclosures and the personnel actions at issue in this appeal occurred prior to the December 27, 2012 effective date of the Whistleblower Protection Enhancement Act (WPEA), the applicable statute is the Whistleblower Protection Act of 1989 (WPA). Pub. L. No. 112-199, § 202, 126 Stat 1465, 1476; Pub. L. No. 101-12, 103 Stat. 16. While this decision occasionally cites to post-WPEA

case law, it does so only when the premise for which a case is cited is not implicated by a change in law under the WPEA.

¶10     Under the WPA, the Board has jurisdiction over an IRA appeal if the appellant has exhausted her administrative remedy before OSC and makes nonfrivolous allegations that she engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8) and that the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001); *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 7 (2011). As noted, the essence of the appellant's argument is that, in reprisal for filing an OIG complaint and making disclosures about a lack of proper equipment, lack of security guards, the practice of over-prescribing pain medication, and inadequate patient care resulting from staffing issues and negligent staff, the agency gave her a unsatisfactory performance evaluation and terminated her. W-1 AF, Tab 1 at 5, Tab 5; RF, Tab 3; RPFR File, Tab 1. She also alleges that she exhausted her remedy before OSC. RPFR File, Tab 1 at 11. We first address the exhaustion element.

The appellant proved by preponderant evidence that she exhausted her administrative remedy with OSC.

¶11     To satisfy the exhaustion requirement of 5 U.S.C. § 1214(a)(3), an appellant must have provided OSC with a sufficient basis to pursue an investigation into her allegations of whistleblower reprisal. *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 7; *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10. Generally, exhaustion can be demonstrated through the appellant's OSC complaint, evidence the original complaint was amended (including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations), and the appellant's written responses to OSC. *Skarada*, 2022 MSPB 17, ¶ 7; *Mason*, 116 M.S.P.R. 135, ¶ 8. Alternatively, exhaustion may be proven through other sufficiently reliable

evidence, such as an affidavit or declaration attesting that the appellant raised with OSC the substance of the facts in her appeal. *Skarada*, 2022 MSPB 17, ¶ 7; *Chambers*, 2022 MSPB 8, ¶ 11.

¶12    With the appellant's initial appeal, she included an August 3, 2015 letter to OSC referencing her OSC case file number MA-15-3687 and setting forth her reprisal claims for disclosures concerning, among other things, inadequate patient care resulting from staffing issues and negligent staff and the lack of basic equipment and adequate security. W-1 AF, Tab 1 at 9-15. She also submitted an August 27, 2015 close-out letter from OSC for that case, which addressed her claims of retaliation. *Id.* at 16-17. Additionally, following the Board's Remand Order, the appellant attached to her response to the administrative judge's jurisdictional order a copy of a January 17, 2012 letter from OSC concerning a complaint docketed as case file number MA-11-2861. RF, Tab 3 at 38. The letter discusses some of the allegations regarding her refusal to prescribe pain medication to patients whose condition did not warrant a prescription. *Id.*

¶13    In the remand initial decision, the administrative judge found that OSC's January 17, 2012 letter denying relief in the complaint docketed as MA-11-2861 revealed that the appellant's claim with OSC filed in 2011 did not contain allegations of whistleblower reprisal. RID at 6-7. He also considered OSC's August 27, 2015 close-out letter concerning OSC File No. MA-15-3687 but ultimately found that the appellant neither provided a copy of her complaint to OSC nor described her allegations of exhaustion in an affidavit, sworn statement, or declaration under penalty of perjury. RID at 7-8. Thus, he found that the appellant failed to establish the exhaustion requirement.[2]

---

[2] In making these findings, the administrative judge relied on the Board's pre-*Chambers* case law, which required the appellant to show by preponderant evidence that she informed OSC of the "precise grounds" of her charge of whistleblowing. RID at 4-5; *Ward v. Merit Systems Protection Board*, 981 F.2d 521, 526 (Fed. Cir. 1992). In *Chambers*, the Board clarified that the substantive requirements of exhaustion are met when an appellant has provided OSC with sufficient basis to pursue an investigation

¶14    On review, the appellant challenges this finding and asserts that she brought all her claims to OSC. RPFR File, Tab 1 at 11. This assertion, made under the penalty of perjury, *id.* at 3, in conjunction with the appellant's August 3, 2015 letter to OSC and OSC's August 27, 2015 close-out letter leads us to conclude that she met the exhaustion requirement, *see Chambers*, 2022 MSPB 8, ¶ 11. In the August 27, 2015 close-out letter, OSC acknowledged the appellant's allegations that she was retaliated against for making disclosures regarding the "lack of equipment, poor assignment of available staff, poor patient care, and the absence of security guards." W-1 AF, Tab 1 at 17. It also referenced the appellant's claims regarding the agency's alleged practice of over-prescribing pain medication. *Id.* Additionally, her August 3, 2015 letter to OSC discussed her disclosure regarding the negligent treatment of patients and staff due to staffing issues, the lack of proper equipment, and the absence of security guards. *Id.* at 12-14. She also stated in the August 3, 2015 letter to OSC that she was also retaliated against for filing a complaint with the agency's OIG. *Id.* at 13. Based on the foregoing, we find that the appellant proved by preponderant evidence and through appropriate means that she provided OSC with a sufficient basis to pursue an investigation. The appellant's failure to submit her OSC complaint does not change this finding. *See Chambers*, 2022 MSPB 8, ¶ 11; *Smart v. Department of the Army*, 98 M.S.P.R. 566, ¶ 10 n.4, *aff'd*, 157 F. App'x 260 (Fed. Cir. 2005).

¶15    Because the administrative judge found in the remand decision that the appellant failed to exhaust her administrative remedy, he did not consider whether she nonfrivolously alleged that she made a protected disclosure under 5 U.S.C.

---

and that an appellant may give a more detailed account of their whistleblowing activities before the Board than they did to OSC. *Skarada*, 2022 MSPB 17, ¶ 7; *Chambers*, 2022 MSPB 8, ¶ 10. The remand initial decision in this matter was issued prior to the Board's issuance of *Chambers*.

§ 2302(b)(8) that was a contributing factor in a personnel action. Thus, we do so here.

The appellant nonfrivolously alleged that she made protected disclosures under 5 U.S.C. § 2302(b)(8).

¶16     Under the WPA, an appellant makes a protected disclosure when she discloses something that she reasonably believes evidences a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety. 5 U.S.C. § 2302(b)(8); *Mason*, 116 M.S.P.R. 135, ¶ 17. The proper test for determining whether an employee had a reasonable belief that her disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions evidence any of the wrongdoing set forth in 5 U.S.C. § 2302(b)(8). *Id.* As set forth above, the appellant asserted that she disclosed to agency officials on numerous occasions a lack of basic equipment, a lack of security for staff dealing with difficult patients, the practice of some staff to over-prescribe pain medication, and inadequate patient care resulting from staffing issues and negligent staff.

¶17     Regarding the disclosure concerning the lack of equipment, the appellant asserted that she personally observed as soon as she began her position with the agency that there was a "lack of basic medical equipment" and that she complained to upper management, including the Manager of Nursing and the Deputy Assistant Chief of Staff, who was her "[r]eporting [o]fficer" at the time about these conditions. W-1 AF, Tab 5 at 5-6, 12-13, 23-24, 26, 34-35. Specifically, she asserted that there was no equipment for serious medical emergencies, which resulted in staff summoning an ambulance to take patients to other facilities, no stable cardiopulmonary resuscitation (CPR) equipment, no equipment to remove a deer tick in a patient, and no equipment to remove stitches. *Id.* at 12-13; RF, Tab 3 at 23-24. Of the categories of wrongdoing set

forth in 5 U.S.C. § 2302(b)(8), this disclosure most closely aligns with "a substantial and specific danger to public health or safety" because it directly impacts the agency's care for patients. Notably, regarding the allegation concerning the lack of CPR equipment, the nature and harm that could result from this lack of equipment is severe because patients could potentially die without the proper equipment. *See Parikh v. Department of Veterans Affairs*, 116 M.S.P.R. 197, ¶ 15 (2011). Regarding the appellant's reasonable belief in this disclosure, the Board has reasoned that allegations based on a "personal observation" can constitute a nonfrivolous allegation that an appellant had a reasonable belief that her disclosures evidenced the wrongdoing set forth in 5 U.S.C. § 2302(b)(8). *See Kinsey v. Department of the Navy*, 107 M.S.P.R. 426, ¶ 17 (2007). Based on the foregoing, we find that the appellant nonfrivolously alleged that, when she disclosed the lack of proper medical equipment, she disclosed matters that she reasonably believed evidenced a substantial and specific danger to public health or safety, and that she, therefore, made a nonfrivolous allegation of a protected disclosure in this regard.

¶18      The appellant also alleged that she disclosed a lack of security for staff members dealing with difficult patients. Specifically, she asserted that the East Campus of CAVHCS had only two security guards assigned to cover its 180-acre campus, and that, in one instance, "two male patients double-teamed [her] for a 'hasty' prescription refill and travel money." W-1 AF, Tab 5 at 16. She further explained that she "frequently feared for her personal safety" because of the inadequate number of security guards to protect from "disgruntled patients who physically confronted her." *Id.* She asserted that she emailed senior management, including the Deputy Assistant Chief of Staff and the Assistant Chief of Staff of Ambulatory Care about these concerns. *Id.* at 31. Of the categories of wrongdoing, this allegation most closely aligns with an allegation of gross mismanagement. Gross mismanagement is more than de minimis wrongdoing or negligence, and it does not mean action or inaction which

constitutes simple negligence or wrongdoing. *See Smith v. Department of the Army*, 80 M.S.P.R. 311, ¶ 8 (1998). Rather, an appellant discloses gross mismanagement when she alleges that a management action or inaction creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission. *Cassidy v. Department of Justice*, 118 M.S.P.R. 74, ¶ 8 (2012); *see Smith*, 80 M.S.P.R. 311, ¶ 8. Here, we construe the appellant's allegation as one asserting that the lack of security guards to protect physicians presents the serious risk that physicians may not be able to effectively treat patients and carry out the agency's core mission of caring for veterans. Additionally, the appellant has alleged that her belief in this wrongdoing is based on her own personal experiences with difficult patients without security guards on duty. Based on the foregoing, we find that the appellant nonfrivolously alleged that, when she disclosed the lack of security guards for staff dealing with difficult patients, she disclosed conduct that she reasonably believed evidenced gross mismanagement, and that she, therefore, made a nonfrivolous allegation of a protected disclosure in this regard. *See Cassidy*, 118 M.S.P.R. 74, ¶ 8; *Kinsey*, 107 M.S.P.R. 426, ¶ 17.

¶19   Regarding the appellant's disclosure concerning some staff's practice of over-prescribing pain medication, she alleged that she disclosed to at least the Deputy Assistant Chief of Staff that there was "an illegal 'pill mill' atmosphere" at the CAVHCS. W-1 AF, Tab 5 at 83; RF, Tab 3 at 27. To support her belief in this allegation, the appellant asserted that she had witnessed a quantity of pain medication passing through one provider with an estimated street value of 4-5 million dollars annually despite no documented need for such medication. W-1 AF, Tab 5 at 22-23, 33, 36. Such an allegation aligns with several categories of wrongdoing set forth in section 2302(b)(8), including an abuse of authority,[3] a

---

[3] An employee discloses an abuse of authority when she alleges that a Federal official has arbitrarily or capriciously exercised power which has adversely affected the rights of any person or has resulted in personal gain or advantage to herself or to other

substantial and specific danger to public health and safety, and a violation of law, rule, or regulation, as the substance of the appellant's disclosure raises questions regarding whether a Federal official arbitrarily exercised his or her power for personal gain or the gain of others, whether a large quantity of pain medication would be distributed into the community without authorization, and whether the physician and/or others broke any laws, rules, or regulations regarding the distribution and use or prescription medications.  In any event, the Board does not require, as a basis for jurisdiction, that an appellant correctly label a category of wrongdoing under the WPA.  *See Rzucidlo v. Department of the Army*, 101 M.S.P.R. 616, ¶ 13 (2006).  Further, the appellant again alleged that she personally witnessed at least one instance of this practice.  W-1 AF, Tab 5 at 22.  Accordingly, we find that the appellant nonfrivolously alleged that, when she disclosed the purported improper prescribing of pain medication, she was disclosing conduct that she reasonably believed evidenced the sort of wrongdoing set forth in 5 U.S.C. § 2302(b)(8), and that she, therefore, made a nonfrivolous allegation of a protected disclosure in this regard.  *See Kinsey*, 107 M.S.P.R. 426, ¶ 17.

¶20    The appellant also alleged that she continuously disclosed inadequate patient care resulting from staffing issues and negligent staff.  W-1 AF, Tab 5 at 34-35.  For example, she explained that walk-in patients would not be discovered until several hours after their arrival and that some of the few nurses on staff would ignore patients in observable distress.  RF, Tab 3 at 15, 19, 21.  She asserted that she constantly disclosed these concerns to the Nurse Manager and the Assistant Chief of Staff.  *Id.* at 15.  As with the appellant's disclosure regarding the lack of security to deal with difficult patients, we believe this allegation is one of gross mismanagement.  Again, an allegation of gross mismanagement involves an allegation of management action or inaction which

preferred persons.  *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 10 n.3 (2015).

creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission. *Cassidy*, 118 M.S.P.R. 74, ¶ 8; *see Smith*, 80 M.S.P.R. 311, ¶ 8. Here, the agency's foremost mission is to provide adequate care for veterans. Thus, complaints that management's decisions regarding staffing and its practice of ignoring complaints of inadequate care suggest that the agency both engaged and failed to engage in conduct that created a substantial risk of adverse impact on the agency's ability to accomplish its mission. Moreover, the appellant's allegations appear to be based on her personal experiences and observations. RF, Tab 3 at 15, 19, 21. Therefore, we find that the appellant nonfrivolously alleged that, when she disclosed inadequate patient care and management's refusal to address it, she was disclosing conduct that she reasonably believed evidenced gross mismanagement, and that she, therefore, made a nonfrivolous allegation of a protected disclosure in this regard. *See Cassidy*, 118 M.S.P.R. 74, ¶ 8; *Kinsey*, 107 M.S.P.R. 426, ¶ 17.

¶21      Turning to the appellant's OIG complaint, she alleges that sometime in 2011, she filed a complaint with the agency's OIG regarding her concern about physicians over-prescribing pain medication. W-1 AF, Tab 5 at 8. Under the WPA, a disclosure to the OIG is protected when the employee making the disclosure reasonably believes that the contents of the complaint evidences a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *See* 5 U.S.C. § 2302(b)(8)(B). Because we already found that the appellant nonfrivolously alleged that she reasonably believed that she was reporting wrongdoing under section 2302(b)(8)(A) when she allegedly disclosed her concerns about the over-prescribing of pain medication, *see supra* ¶ 19, we also find that the appellant made a nonfrivolous allegation of a protected disclosure under section 2302(b)(8)(B) when she filed her OIG complaint.

<u>The appellant nonfrivolously alleged that the agency took personnel actions against her.</u>

¶22    The appellant has alleged that the agency gave her an unsatisfactory performance evaluation and terminated her. W-1 AF, Tab 1 at 5. A termination and performance evaluation are covered personnel actions under 5 U.S.C. § 2302(a)(2)(A)(iii), (viii). Thus, we find that the appellant nonfrivolously alleged that the agency took personnel actions against her.

<u>The appellant has nonfrivolously alleged that her protected disclosures and OIG complaint were a contributing factor in her termination and that her protected disclosures were a contributing factor in her unsatisfactory performance appraisal, but she failed to nonfrivolously allege that the OIG complaint was a contributing factor to the unsatisfactory performance appraisal.</u>

¶23    To satisfy the contributing factor criterion at the jurisdictional stage of an IRA appeal, an appellant need only raise a nonfrivolous allegation that the fact of, or content of, the protected disclosure was one factor that tended to affect the personnel action in any way. *Mason*, 116 M.S.P.R. 135, ¶ 26. One way to establish this criterion is the knowledge/timing test, under which an employee may nonfrivolously allege that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure, and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.*

¶24    Addressing the application of the knowledge/timing test to the four alleged disclosures to agency managers set forth above, the appellant asserted that the "[a]gency officials responsible for the personnel actions . . . were aware of her disclosures and acted within such time that a reasonable person could find that the disclosures contributed to their egregious actions against her." RF, Tab 3 at 33. Specifically, regarding her unsatisfactory performance appraisal, the appellant alleged that the Assistant Chief of Staff of Ambulatory Care rated her "Unsatisfactory" in a June 6, 2011 performance evaluation and that he was aware

of her disclosures at that time. *Id.* at 25, 28; W-1 AF, Tab 5 at 37. Thus, the appellant has nonfrivolously alleged that the agency official responsible for this personnel action had knowledge of her disclosures, thereby satisfying the knowledge prong of the knowing/timing test at the jurisdictional stage.

¶25    Regarding the timing prong of the knowledge/timing test, the appellant alleged that she disclosed the lack of basic medical equipment "[s]oon after assuming her position" in August of 2010. W-1 AF, Tab 5 at 34. She also asserted that she disclosed the lack of security for the first time in December 2010, W-1 AF, Tab 5 at 12 n.2, the over-prescribing of pain medications beginning in late 2010 through at least July 2011, *id.* at 83; RF, Tab 3 at 27, and the inadequate care of patients for the first time in October 2010, W-1 AF, Tab 5 at 12 n.2.[4] The Board has explained that personnel actions that occur within 1-2 years of a protected disclosure meet the timing prong of the knowledge/timing test. *Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶ 41; *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶¶ 18, 21 (2015). Because these disclosures all occurred within 1 year of the June 6, 2011 performance appraisal, we find that the appellant's allegations regarding all four disclosures meet the timing prong of the knowledge/timing test. Based on the foregoing, we find that the appellant's allegations satisfy both prongs of the knowledge/timing test, and that she has, therefore, nonfrivolously alleged that her protected disclosures were a contributing factor to the performance evaluation. *See Mason*, 116 M.S.P.R. 135, ¶ 26

¶26    Turning to the appellant's termination, we are unable to ascertain from the record whether the appellant is alleging that the deciding official had knowledge

---

[4] Specifically regarding the appellant's disclosures about the lack of security and the inadequate care of patients, the appellant alleged that the referenced dates represent the "first of many complaints," W-1 AF, Tab 5 at 12 n.2, and her pleadings generally suggest that she continually complained of these issues. For purposes of the contributing factor analysis, the last time a disclosure is made prior to the personnel action at issue is the relevant date for the timing prong of the knowledge/timing test.

of her disclosures. However, the deciding official explained in the December 7, 2011 termination notice that the PSB convened to review the appellant's conduct and performance and recommended that the appellant be separated during her probationary period, and the appellant has alleged that the members of the PSB had knowledge of her disclosures. W-1 AF, Tab 1 at 7, 14. In addition to showing actual knowledge, an appellant can also nonfrivolously allege that a disclosure was a contributing factor to a personnel action by alleging that the official taking the action had constructive knowledge of the disclosure. *See Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 11 (2012). An appellant may nonfrivolously allege constructive knowledge by alleging that an individual with actual knowledge of the disclosure influenced the official accused of taking the retaliatory action. *See id.* Because the appellant has alleged that the members of the PSB had knowledge of her disclosures and influenced the agency's decision to terminate her, we find that she nonfrivolously alleged that the deciding official had constructive knowledge of her disclosures.[5] As such, the appellant's allegations meet the knowledge prong of the knowledge/timing test.

¶27    Regarding the timing prong, the appellant has alleged that the PSB members learned of her disclosures "early on." W-1 AF, Tab 1 at 14. Although this allegation is imprecise, we construe allegations liberally in favor of finding jurisdiction, given the minimal showing required to meet the nonfrivolous standard. *See Skarada*, 2022 MSPB 17, ¶ 6 (stating that any doubt or ambiguity

---

[5] As previously discussed, the appellant alleged that she received an unsatisfactory performance appraisal on June 6, 2011, RF, Tab 3 at 25, and that the PSB met in late 2011 to discuss her conduct and performance, W-1 AF, Tab 11 at 16. Given the timeline, it is conceivable that the June 6, 2011 performance appraisal was considered as a part of the PSB's review. As noted above, the appellant has alleged that the Assistant Chief of Ambulatory Care—the agency official responsible for the performance appraisal—had knowledge of her disclosures. W-1 AF, Tab 5 at 37; RF, Tab 3 at 25, 28. Thus, we construe these claims as allegations asserting that the Assistant Chief of Ambulatory Care also influenced the agency's decision to terminate the appellant, further supporting the finding that the deciding official had constructive knowledge of the appellant's disclosures.

as to whether the appellant made a nonfrivolous jurisdictional allegation should be resolved in favor of finding jurisdiction); *Jessup v. Department of Homeland Security*, 107 M.S.P.R. 1, ¶ 10 (2007) (observing that the appellant's burden of making a nonfrivolous allegation is low and requires only a minimal sufficient showing). Again, the appellant's employment with the agency began in August 2010, and, according to the appellant, the PSB met to discuss her performance and conduct on October 31, 2011. W-1 AF, Tab 1 at 10. We reasonably construe the appellant's claim that the members of the PSB became aware of her disclosures "early on" to at least allege that they became aware of them prior to October 31, 2011. The PSB recommended that the agency terminate the appellant sometime between October 31, 2011, and December 7, 2011, which is within 1-2 years of its members becoming aware of the disclosures. Thus, we find that the appellant's allegations also meet the timing prong of the knowledge/timing test. Accordingly, we find that the appellant has nonfrivolously alleged that her four disclosures were contributing factors in her termination.

¶28 Regarding the appellant's OIG complaint, the record demonstrates that this complaint was filed on or around June 23, 2011. W-1 AF, Tab 5 at 80-81. As set forth above, the appellant's unsatisfactory performance appraisal was issued prior to the appellant's OIG complaint, on June 6, 2011. RF, Tab 3 at 25. Given this timeline, the appellant's OIG complaint could not have been a contributing factor to the performance appraisal because it occurred after the appraisal. *Mason*, 116 M.S.P.R. 135, ¶ 27 (finding that disclosures occurring after the personnel actions at issue could not have been contributing factors in those actions); *Orr v. Department of the Treasury*, 83 M.S.P.R. 117, ¶ 15 (1999) (same), *aff'd per curiam* 232 F.3d 912 (Fed. Cir. 2000).

¶29 Turning to the appellant's termination, the appellant has not alleged that any of the officials involved in that action, including the deciding official and the PSB members, were aware of her OIG communications. W-1 AF, Tabs 1, 5; RF,

Tab 3. Thus, she has not alleged facts that would satisfy the knowledge/timing test. If an employee fails to satisfy the knowledge/timing test, the Board considers other evidence, such as that pertaining to the strength or weakness of the agency's reasons for taking the actions, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether those individuals had a desire or motive to retaliate against the appellant. *Rumsey v. Department of Justice*, 120 M.S.P.R. 259, ¶ 26 (2013); *Dorney*, 117 M.S.P.R. 480, ¶ 15.

¶30 Regarding the strength or weakness of the agency's reasons for taking the action, the appellant alleges that her termination was based on a recommendation from the PSB, which provided four bases for the appellant's improper conduct and inadequate performance. W-1 AF, Tab 5 at 27-28. She further alleges that the Pennsylvania State Board of Medicine examined these claims and found her "not culpable" in three of them. *Id.* at 11, 106-130. This at least suggests that the agency's reasons for terminating her were weak. Regarding whether those responsible for the termination had a desire or motive to retaliate against the appellant, the general tenor of the appellant's pleadings is that she believed agency management viewed her as a trouble maker who consistently complained about the state of operations at CAVHCS, for which, at least to some degree, they were responsible. W-1 AF, Tab 5 at 4. This again at least suggests that a motive to retaliate existed. Although the OIG complaint itself does not appear to be directed at any specific individual, we find that, after assessing these factors on balance, the appellant has met the low burden at this stage of the proceedings to nonfrivolously allege that her OIG complaint was a contributing factor in her termination.

¶31 In sum, we find that the appellant nonfrivolously alleged that her four protected disclosures were contributing factors in her June 2011 performance appraisal and her termination and that her OIG complaint was a contributing

factor in her termination. Therefore, we find that the appellant has established the Board's jurisdiction over those claims.

## ORDER

¶32 For the reasons discussed above, we remand this case to the Atlanta Regional Office for adjudication on the merits in accordance with this Remand Order.


FOR THE BOARD:      /s/ for
_____
            Jennifer Everling
            Acting Clerk of the Board
Washington, D.C.